596 So.2d 1344 (1992)
STATE of Louisiana
v.
Samuel D. OVERTON.
No. KA 90 2044.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
Writ Denied May 22, 1992.
*1348 Washington Parish Dist. Atty., Franklinton, Bill Campbell, New Orleans, for plaintiff State of La.
Marion B. Farmer, Covington, for defendant Samuel D. Overton.
Before WATKINS, CARTER and FOIL, JJ.
FOIL, Judge.
The defendant, Samuel D. Overton, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. He pled not guilty[1] and, after trial by jury, was found guilty as charged. He received a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant has appealed, alleging eleven assignments of error, as follows:
1. The trial court erred in denying the Motion to Quash the indictment on the grounds of the failure of the state to provide the defense with a copy of the police report.
2. The trial court erred in failing to order the State to provide the defense with a copy of the offense report.
3. The trial court erred in denying the defendant's motion to suppress physical evidence due to the lack of consent to the search by the defendant.
4. The trial court erred in denying the defendant's motion to suppress the confession.
5. The trial court erred in allowing State Exhibits 4 and 6 to be introduced into evidence without a proper foundation and/or identification.
6. The trial court erred in denying the defendant's motion to suppress evidence and the confession on the basis that the police failed to properly advise the defendant of his Miranda rights prior to questioning.
7. The trial court erred in allowing into evidence testimony concerning State Exhibit 6.
8. The trial court erred in allowing the defendant's confession to be admitted into evidence without deleting "curse words" contained therein.
9. The trial court erred in denying the defendant's motion for post-verdict judgment of acquittal.
10. The trial court erred in denying the defendant's motion for a new trial.
11. The trial court erred in denying the defendant's motion for a new trial.

FACTS
At approximately 11:45 p.m. on May 5, 1989, the victim, Robin Primes, was fatally stabbed by the defendant during a fight which occurred at the LaFloridan Motel in Bogalusa, Louisiana. At approximately 11:00 p.m. that evening, the defendant and the victim had a fight at the K & S Convenience Store in Bogalusa. The defendant entered the store to purchase a sandwich. When he entered, he bumped or pushed the victim, who had been standing in or near the doorway. Inside the store, the two men exchanged words until a fight began. During this fight, the defendant warned the victim that he had a gun in his pocket; he threatened to shoot the victim. Shortly thereafter, a white male entered the store, observed what was happening, and told the defendant that he should shoot the victim and then shoot himself in the head. After these comments, this white male purchased a six pack of beer, left the store, and was *1349 never identified. When the fight ended, neither man was hurt. The defendant purchased his sandwich and left on foot in the direction of the LaFloridan Motel. The victim remained in the store.
The entire incident at the K & S Store was witnessed by an employee, Arnetta Butler. Another employee, Gloria Grant, hid in the back bathroom during part of the fight. When the police arrived, the defendant had already left the store. The officers spoke with Ms. Butler and Ms. Grant. The victim informed Bogalusa Police Officer Kenny Kellis that the altercation was over and there was no problem. However, a short time later at Club Nemesis, the victim again spoke with Officer Kellis. The victim informed Officer Kellis that the defendant was armed with a gun during the fight at the K & S Store. The victim also stated to Officer Kellis: "If I'm out and I run into this guy [the defendant] and he messes with me, I'm going to mess him up." Officer Kellis informed the victim that he had a right to defend himself but also advised that he should call the police if he had any further problems with the defendant.
The victim went to a bar called The Pub and located his friend, David Ratley. He told Ratley that he had had some trouble with a couple of fellows at the K & S Store and that he needed Ratley and Ratley's gun. Ratley went to his car and retrieved his .38 pistol, and the two men got in the victim's red Toyota truck and left in search of the defendant. Although Ratley informed the victim that he had no ammunition for his gun, the victim replied that they would stop and get some on the way.
The victim drove to the LaFloridan Motel and pulled into the parking lot, where he observed the defendant standing outside his motel room. The manager, Ramesh Kikawala, observed the victim's truck and asked the victim and Ratley what they wanted. They informed Kikawala that they had a fight or argument with two men staying at the motel. At this point, the defendant's roommate, David Key, approached the passenger side of the victim's truck and began arguing with Ratley. Shortly thereafter, the defendant approached the driver's side of the truck and began arguing with the victim. Both the victim and Ratley remained inside the truck. Suddenly, a fight erupted. The defendant stated that he had a knife and threatened to "cut" the victim. He reached inside the truck and stabbed the victim at least twice. When Ratley heard this statement by the defendant and saw the knife, he reached down to the floorboard of the truck and grabbed his .38 pistol, which he believed to be unloaded. Key saw the gun, grabbed it, and began struggling with Ratley for the gun. One of the men pulled the trigger, but there was not a bullet in the chamber. Key warned the defendant about the gun, and someone shouted at Kikawala to call the police. The victim put the truck in reverse, backed out into the street, and drove away. Shortly thereafter, he informed Ratley that he was feeling weak, and he slumped over the wheel. Ratley pulled the truck over to the side of the road and observed that the victim had been stabbed. He pulled the victim to the passenger side of the truck and drove a short distance to the police station. He ran inside and informed the police that the victim had been stabbed. Bogalusa Police Officer Mike Edwards went outside, observed the victim, and informed Ratley to drive the victim to nearby Charity Hospital. At this time, Edwards observed only the superficial stab wound to the victim's chest. He also observed that the victim's hand was touching Ratley's .38 pistol on the floorboard of the truck. Officer Edwards removed the pistol and discovered that it contained one live round.
Ratley drove the victim to Charity Hospital. On the way to the hospital, Officer Edwards was diverted to the LaFloridan Motel to investigate a complaint about an intoxicated man. After handling this complaint, he spoke with Kikawala about the earlier stabbing incident. Kikawala pointed to the defendant and Key, who were sitting by the drink machine. Officer Edwards *1350 approached the defendant and Key and asked if they had been involved in the earlier altercation, and they responded in the affirmative. He then asked if they had a knife, and Key responded that he had a knife but had not stabbed anyone. Key voluntarily surrendered the knife to Officer Edwards, who opened it and observed a small bloodstain. At this point, the defendant and Key were not arrested; but they were returned to the police station for questioning. Officer Edwards then proceeded to the hospital, when he learned that the victim was dead. In addition to the superficial stab wound across the victim's chest, there was a second wound which had punctured the victim's heart, resulting in his death. Ratley was also returned to the police station for questioning. Ratley later explained that he had been drinking and he did not actually believe they would encounter the men who started trouble with the defendant at the K & S Store.
At approximately 1:46 a.m. on May 6, the defendant and Key consented to a search of their motel room. The defendant's .25 automatic pistol was recovered during this search. At approximately 2:35 a.m., the defendant signed a Miranda rights waiver form and gave a tape-recorded statement recounting both the initial incident at the K & S Store and the subsequent confrontation at the LaFloridan Motel. The defendant admitted that he had Key's knife during the fight at the LaFloridan Motel, but he denied stabbing the victim. Instead, he claimed that he hit the victim two or three times with his hand. Shortly after giving this statement, the defendant was arrested for the second degree murder of the victim.
Subsequent tests revealed that the victim's blood alcohol content was .10 grams percent. However, a toxicology test to detect the presence or absence of other drugs was not performed.
ASSIGNMENTS OF ERROR NOS. ONE AND TWO:
In these assignments of error, the defendant contends that the trial court erred in ruling that the defense was not entitled to the entire Supplemental Offense Report. During discovery, the defense filed a motion for production of the Initial Offense Report. A brief, one page Initial Offense Report was provided to the defense. At a pretrial hearing on February 5, 1990, the defendant contended that he was entitled to additional information. The prosecutor noted the existence of a Supplemental Offense Report but concluded that the defense was not entitled to it. In ruling that the defendant's motion for production of the Initial Offense Report had been satisfied, the trial court specifically noted that it had only the initial report before it at that time.
Subsequently, on April 17, 1990, the second day of the trial and immediately before opening arguments, defense counsel requested that the trial court conduct an in camera inspection of the Supplemental Offense Report. The trial court complied with this request, although it noted that the request should have been made at the hearing on February 5, 1990. After reviewing the nine page Supplemental Offense Report, the trial court ruled that the defense was entitled to the first three pages. This ruling was based on two separate grounds. The trial court concluded that the information contained in the first three pages should have been included in the Initial Offense Report. The trial court also noted that the Supplemental Offense Report contained one item of exculpatory evidence which should have been supplied to the defense during discovery. In the Supplemental Offense Report, Officer Edwards noted that, when he first observed the victim on the passenger seat of the red Toyota truck, the victim's hand was touching a .38 pistol (State Exhibit 18) which was later identified as belonging to Mr. Ratley. During the discussion about this item of exculpatory evidence which followed, the prosecutor explained that he had not disclosed this item of evidence to the defense during discovery as Brady material because he did not believe it to be exculpatory. The prosecutor further explained that, *1351 at the time the victim's hand was observed to be touching State Exhibit 18, the victim was almost unconscious and had been driven to the police station by Ratley. The trial court accepted the prosecutor's explanation and concluded that the prosecutor was not actually attempting to withhold exculpatory evidence. Defense counsel then objected to the trial court's ruling that the defense was not entitled to the remaining six pages of the Supplemental Offense Report. The trial court ordered the remaining six pages sealed for appellate review.
In his brief to this Court, the defendant concludes that he was entitled to the entire Supplemental Offense Report. As authority for this proposition, he cites LSA-R.S. 44:3 A(4); State v. Shropshire, 471 So.2d 707 (La.1985); State v. McEwen, 504 So.2d 817 (La.1987); and Cormier v. Public Records Request of DiGiulio, 553 So.2d 806 (La.1989). However, Shropshire and McEwen were decided before LSA-R.S. 44:3 was amended by Act 438, Sec. 1 of 1988, which took effect on September 9, 1988. Cormier was decided after this amendment and refers to subparagraph A(4)(b), which defines the specific contents required in an initial report. LSA-R.S. 44:3 A(4)(b) now provides:
The initial report shall set forth:
(i) A narrative description of the alleged offense.
(ii) The name and identification of each person charged with or arrested for the alleged offense.
(iii) The time and date of the alleged offense.
(iv) The location of the alleged offense.
(v) The property involved.
(vi) The vehicles involved.
(vii) The names of investigating officers.
After reviewing the Initial Offense Report and the entire Supplemental Offense Report, we find no error in the trial court's ruling that the defense was not entitled to the remaining six pages of this Supplemental Offense Report. The Initial Offense Report and the first three pages of the Supplemental Offense Report contained all of the information now required by LSA-R.S. 44:3 A(4)(b).
The defendant also contends that he was prejudiced because he received the information in the first three pages of the Supplemental Offense Report during trial. Specifically, he contends that he was prejudiced in his ability to adequately prepare a defense. Defendant states that he should have received the exculpatory information about the victim's hand touching a .38 pistol during discovery. The defendant also states: "There was further information just in these three pages of this report which could have been developed and used for impeachment purposes at trial, concerning the failure to advise the suspect of his rights before questioning him, the failure of the State to have toxicology tests performed on the victim, and other matters."
Concerning the information contained in the first three pages of the Supplemental Offense Report which allegedly could have been developed for impeachment purposes, we initially note that the trial court stated it would have reviewed the Supplemental Offense Report at the pretrial hearing on February 5, 1990, if the defense had made a request for an in camera inspection at that time. Furthermore, after receiving the first three pages of the Supplemental Offense Report, defense counsel did not request a recess. In fact, defense counsel admitted that he should have requested an in camera inspection earlier and indicated that he did not intend to delay the trial. Reviewing the trial transcript, we reject the defendant's argument that he was prejudiced because the first three pages of the Supplemental Offense Report were supplied to the defense too late to prepare an adequate defense. Defense counsel fully cross-examined the State's witnesses with respect to the advice of Miranda rights issue and the failure to perform toxicology tests on the victim.
We now turn to the exculpatory evidence contained in the Supplemental Offense *1352 Report. As the trial court noted, the information that the victim's hand was touching the pistol was exculpatory "on its face" and should have been provided to the defense during discovery. However, the State's failure to comply with discovery procedures will not automatically require a reversal. State v. Burge, 486 So.2d 855, 866 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La.1986). In order to constitute reversible error, the undisclosed exculpatory evidence would have to create a reasonable doubt that would not otherwise exist in the context of the whole record. State v. Hamilton, 470 So.2d 604, 607 (La. App. 1st Cir.1985). For the very same reasons expressed by the prosecutor in support of his belief that this information was not exculpatory, we find no reversible error in the failure to supply this information to the defense during discovery as Brady material. The trial testimony clearly established that the .38 pistol belonged to Ratley and that Ratley, not the victim, deliberately showed this pistol to Key when the fight got out of hand. During the fight, the victim was driving his Toyota truck and Ratley was in the front passenger seat. After Ratley produced the pistol, the victim backed out of the motel parking lot and drove away. After a short distance, the victim slumped over the wheel due to a loss of blood. Ratley pulled the victim over to the passenger side and got behind the wheel. He drove to the police station, where Officer Edwards observed the victim's hand touching the .38 pistol on the floorboard. Although exculpatory on its face in the sense that the victim's hand was observed to be touching a gun, the trial testimony noted above indicated that this evidence could not possibly have created a reasonable doubt that did not otherwise exist. See State v. Hamilton, 470 So.2d at 607. Furthermore, although this evidence was not supplied to the defense during discovery, it was supplied to the defense before opening argument and defense counsel referred to this evidence during the cross-examination of Officer Edwards.
For the above reasons, these assignments of error are meritless.
ASSIGNMENTS OF ERROR NOS. THREE, FOUR AND SIX:
In these assignments of error, the defendant contends that the trial court erred in denying his motion to suppress and/or quash. By way of this motion, the defendant sought to suppress his taped statement and all physical evidence. Specifically, in assignment of error number three, the defendant contends that the consent to search waiver form (State Exhibit 20) and his gun (State Exhibit 6) were erroneously admitted into evidence because he did not fully and voluntarily consent to the search of his motel room. In assignments of error numbers four and six, the defendant contends that the Miranda rights waiver form (State Exhibit 19), his tape recorded statement (State Exhibits 21 and 22), and the knife (State Exhibit 4), were erroneously admitted into evidence because he was not properly advised of his Miranda rights either at the time he became a suspect in the investigation or when he was initially interrogated about the offense.
The officers who searched the defendant's motel room did not have a search warrant. However, a consent to search is a recognized exception to the warrant requirement. Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Musacchia, 536 So.2d 608, 610-611 (La. App. 1st Cir.1988).
When the State seeks to rely upon consent to justify a warrantless search, it has the burden of proving that the consent was freely and voluntarily given. Whether or not consent was voluntarily given is an issue of fact to be determined by the fact finder in light of the totality of the circumstances. The trier of fact may consider the credibility of the witnesses, as well as the surrounding circumstances, in determining the issue of voluntariness. State v. Rawls, 552 So.2d 764, 765 (La.App. 1st Cir.1989). On appeal, *1353 the fact finder's determination is entitled to great weight. State v. Edwards, 434 So.2d 395, 397 (La.1983).
In his brief to this Court, the defendant does not argue that his consent to the search was invalid because of duress, coercion, etc. Instead, the defendant contends that his consent to search the motel room was "uninformed." In support of this argument, he refers to the fact that he was not given his Miranda rights by the officers before he signed the consent to search form, nor did the officers tell him he had the right to refuse to give his consent to the search. While the defendant was not verbally informed of his right to refuse to consent to this search, such a warning is not required. Instead, the lack of such a warning is only one factor in determining the voluntary nature of consent to a search. See Schneckloth v. Bustamonte, 412 U.S. 218, 231-234, 93 S.Ct. 2041, 2049-2051, 36 L.Ed.2d 854 (1973). Furthermore, although the defendant was not verbally informed of his right to refuse consent to the search, the consent to search waiver form expressly stated the right to refuse consent to this search. Moreover, contrary to the defendant's argument, a voluntary consent to search is not rendered invalid solely on the basis that a suspect has not been given the Miranda rights. State v. Williams, 353 So.2d 1299, 1304 (La.1977), cert. denied, 437 U.S. 907, 98 S.Ct. 3098, 57 L.Ed.2d 1138 (1978).
Both at the motion to suppress hearing and at trial, the testimony of Officers Edwards and Gomez indicated that the defendant fully and voluntarily consented to the search of his motel room and signed a written consent to search waiver form. Furthermore, even if the defendant did not knowingly and voluntarily consent to this search, he has not addressed the fact that the co-occupant of the motel room, David Key, also consented to this search. Under Louisiana Constitution Art. 1, Sec. 5, the defendant had standing to challenge any violation of Key's constitutional rights which adversely affected the defendant. See State v. Owen, 453 So.2d 1202, 1205 (La.1984). However, neither at the motion to suppress hearing, the trial, nor in his brief to this Court has the defendant asserted such standing or asserted that Key's constitutional rights were violated in any manner by the consensual search of the motel room. Accordingly, we find that the trial court did not err in denying the motion to suppress on this basis and, therefore, State Exhibits 6 and 20 were properly introduced into evidence.
Assignments of error numbers four and six refer to the knife, the Miranda rights waiver form, the tape recording of defendant's statement, and the typed transcript of this statement. The defendant contends that these items should have been suppressed because he was not advised of his Miranda rights at the time he became a suspect in the investigation, nor was he advised of his Miranda rights before custodial interrogation.
It is well-settled that for a confession or inculpatory statement to be admissible into evidence, the State must affirmatively show that it was freely and voluntarily given without influence or fear, duress, intimidation, menace, threats, inducements, or promises. LSA-R.S. 15:451. Additionally, the State must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights. State v. King, 563 So.2d 449, 453 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). However, Miranda warnings are not essential prerequisites to non-custodial, general, on-the-scene interrogation to determine facts relating to whether or not a crime has been committed, or by whom, at least absent a showing that the questioning is past such an investigatory stage. State v. King, 563 So.2d at 454.
When Officer Edwards first approached the defendant and Mr. Key at the LaFloridan Motel, he asked if they had been involved in the earlier altercation with *1354 Mr. Ratley and the victim; they replied in the affirmative. He then asked who had the knife. Mr. Key responded that he had a knife in his pocket but had not stabbed anyone. Mr. Key then removed the knife from his pocket and voluntarily surrendered it to Officer Edwards. Officer Edwards was attempting to ascertain whether or not an offense had been committed, who might be involved, and who might be armed with a weapon. The defendant and Key were not in custody at this point, nor were they subjected to lengthy interrogation. Therefore, Miranda warnings were not required prior to these initial questions. See State v. King, 563 So.2d at 454. Furthermore, the knife clearly belonged to Mr. Key, not the defendant. Mr. Key voluntarily surrendered this knife to Officer Edwards. There is no doubt that the defendant was adversely affected when this bloodstained knife was given to Officer Edwards. However, there was no possible violation of Mr. Key's constitutional rights when Officer Edwards took the knife from Key and placed it into evidence. Accordingly, we conclude that the knife was properly introduced into evidence at the trial.
Concerning the defendant's taped statement, he does not argue that he was coerced or intimidated when making this statement. Instead, the defendant contends that he was subjected to custodial interrogation before being advised of his Miranda rights. However, both at the motion to suppress hearing and at the trial,[2] the testimony of Officers Edwards and Gomez indicated that the defendant was advised of his Miranda rights and had signed a written waiver form (State Exhibit 19) before he gave the statement in State Exhibits 21 and 22. Therefore, the trial court correctly denied the motion to suppress on this basis, and State Exhibits 19, 21, and 22 were properly introduced into evidence at trial.
For all of the above reasons, these assignments of error are meritless.

ASSIGNMENTS OF ERROR NOS. FIVE AND SEVEN:
In assignment of error number five, the defendant contends that the trial court erred in allowing the knife and the defendant's gun to be introduced into evidence without a proper foundation and/or identification. In assignment of error number seven, the defendant contends that the trial court erred in allowing testimony concerning the gun to be introduced into evidence.
Louisiana Code of Evidence Article 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Louisiana Code of Evidence Article 901 provides, in pertinent part:
A. General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
To be admitted at trial, demonstrative evidence must be identified. This identification can be visual, that is, by testimony at trial that the object exhibited is the one related to the case. Alternatively, the evidence can be identified by a chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered into evidence. State v. Pittman, 486 So.2d 895, 896 (La. App. 1st Cir.1986). In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected to the case. State v. Serigny, 481 So.2d 659, 663 (La.App. 1st Cir.1985), writ denied, 484 So.2d 667 (La.1986).
*1355 There is no doubt that this fatal stabbing incident was a direct result of the earlier altercation between the defendant and the victim which occurred at the K & S Convenience Store. Testimony and physical evidence relating to the earlier incident at K & S was relevant to the instant offense because it was necessary to understand how and why the stabbing occurred. Arnetta Butler testified that she saw the handle of a gun protruding from the left pocket of the defendant's blue jeans. According to Ms. Butler, this gun had a brown handle. She identified State Exhibit 6 as being similar to the gun she observed.
Bogalusa Police Officer Kenny Kellis testified that the victim stated he believed he felt a gun in the defendant's pocket during the K & S incident. David Ratley testified that the victim stated he had some trouble with two men at the K & S Store and that one tried to pull a gun on him.
Both the defendant and his roommate, David Key, consented to a search of their motel room. Bogalusa Police Officer Mike Edwards retrieved a .25 automatic from the pocket of a jacket in a closet in that motel room. He identified State Exhibit 6 as the gun he seized.
The above testimony indicates that State Exhibit 6 was properly identified as the defendant's gun. Because it was relevant and it was properly identified, the trial court correctly admitted it into evidence. Having found no error in allowing this gun to be introduced, we likewise find no error in allowing witnesses to testify about it or to testify about the fact that the defendant had this gun during the K & S incident.
Although assignment of error number five also claimed error in allowing the knife used in the stabbing to be admitted into evidence, the defendant has abandoned this particular argument in his brief. Instead, the defendant now raises a new argument in his brief, i.e., that State Exhibit 5, the victim's shirt, was improperly introduced into evidence because it was not identified and no chain of custody was established. Initially, we note that this argument concerning the shirt was not assigned as error. In accord with the well-established jurisprudence of the Louisiana Supreme Court, this Court will not consider arguments which are neither assigned as error nor related to errors patent on the face of the record. State v. Williams, 319 So.2d 404 (La.1975); State v. Spears, 525 So.2d 329, 330 n. 4 (La.App. 1st Cir.), writ denied, 532 So.2d 175 (La.1988). Furthermore, Bogalusa Police Detective Edward Gomez specifically testified that he obtained the victim's shirt at the funeral home after the autopsy was performed and that he gave it to the evidence officer, Det. John Sumrall. Moreover, we also note that State Exhibit 5 appears in three photographs of the victim (State Exhibits 1, 2, and 3) taken shortly after his death.
For the above reasons, these assignments of error are meritless.

ASSIGNMENT OF ERROR NO. EIGHT:
In this assignment of error, the defendant contends that the trial court erred in allowing his tape recorded statement to be introduced into evidence without first deleting "curse words" contained therein. Specifically, the defendant contends that, because the statement contained profanity, its prejudicial effect outweighed its probative value.
LSA-R.S. 15:450 provides:
Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
When a confession or an inculpatory statement contains inadmissible references to other crimes, a jurisprudential exception to LSA-R.S. 15:450 allows a defendant, if he so elects, to excise those other crimes references before the confession or statement is admitted into evidence. See State v. Kent, 489 So.2d 1354, 1359-1360 (La. App. 1st Cir.1986). However, such an exception *1356 is clearly inapplicable herein. Faced with a similar argument, the Second Circuit concluded: "A defendant should not be able to `clean up' his confession or complain of added prejudice because he voluntarily interjects profanity into his confession if the confession is otherwise admissible under the law and the constitution." State v. Loyd, 455 So.2d 687, 688 (La.App. 2d Cir.), writ denied, 461 So.2d 313 (La. 1984). We agree. Accordingly, we find no error in the trial court's ruling requiring the defendant's entire statement to be introduced into evidence.
In briefing this assignment of error, the defendant raised two other arguments. He contends that he was prejudiced because State witnesses referred to him as a "biker" and "Maniac." He also contends that the trial court erred in allowing State Exhibits 1, 2, and 3 to be introduced into evidence because they were unnecessary and prejudicial. Again, we note that these two arguments are not assigned as error and, therefore, will not be considered.
Furthermore, these two additional arguments are completely meritless. The defense never objected to the references "biker" or "Maniac." The State witnesses who made these references explained them. David Ratley characterized the defendant as a "biker" when describing his appearance: long hair, beard, and tattoos. He testified that the defendant's appearance had changed significantly since the stabbing incident but that he recognized the defendant. Ms. Butler testified that she referred to the defendant as "Maniac" because this word appeared on a black shirt he was wearing during the K & S incident. Ms. Butler also explained that the defendant's appearance had changed since the incident. Considering State Exhibits 1, 2, and 3, these photographs could not be considered gruesome by any stretch of the imagination. The trial court examined these photographs and concluded that each depicted some aspect which the others did not. All of the above testimony and physical evidence addressed in these two additional arguments related to identification of the defendant and the victim and, therefore, was relevant and admissible.
This assignment of error is meritless.

ASSIGNMENTS OF ERROR NOS. NINE, TEN AND ELEVEN:
In assignment of error number nine, the defendant contends that the trial court erred in denying his motion for post-verdict judgment of acquittal. By way of this assignment, the defendant contends that the evidence was insufficient to support the instant conviction. In assignments of errors numbers ten and eleven, the defendant contends that the trial court erred in denying his motion for a new trial. The defendant's motion for new trial was based on three grounds: (1) the verdict was contrary to the law and evidence; (2) several rulings by the trial court led to prejudicial and reversible error; and (3) the ends of justice would be served by granting a new trial. Initially, we note that denial of the motion for a new trial based on the interests of justice (La.C.Cr.P. art. 851(5)) is not reviewable on appeal. State v. Walder, 504 So.2d 991, 994 (La.App. 1st Cir.), writ denied, 506 So.2d 1223 (La.1987). Furthermore, the defendant's argument that several trial court rulings led to prejudicial and reversible error is a reference to the other assigned errors previously addressed herein. Having found no merit to those assignments of error, we likewise find no merit to the defendant's cumulation of errors argument. Finally, the remaining ground for a new trial, that the verdict was contrary to the law and evidence, relates to the sufficiency of the evidence and will be addressed with assignment of error number nine.[3]
The standard of review for the sufficiency of the evidence to uphold a conviction *1357 is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
LSA-R.S. 14:30.1 A(1) provides:
Second degree murder is the killing of a human being:
When the offender has a specific intent to kill or to inflict great bodily harm; ...
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent may be proved by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. State v. Johnson, 461 So.2d 1273, 1277 (La.App. 1st Cir.1984). In his brief to this Court, the defendant contends that the evidence was insufficient to exclude every reasonable hypothesis of innocence. Specifically, he argues that the State failed to prove beyond a reasonable doubt the element of specific intent to kill or to inflict great bodily harm. We disagree. The fact that the defendant reached into the truck and stabbed the victim in the chest with a pocketknife indicates a specific intent to kill or to inflict great bodily harm. See LSA-R.S. 14:30.1 A(1); State v. Graham, 420 So.2d 1126, 1127-1128 (La.1982); State v. Gibson, 529 So.2d 1347, 1350-1352 (La. App. 5th Cir.1988), writ denied, 536 So.2d 1212 (La.1989).
When self-defense is raised as an issue by the defendant, the State has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. Thus, the issue in this case is whether or not a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the *1358 defendant did not kill the victim in self-defense. State v. Spears, 504 So.2d 974, 978 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987).
LSA-R.S. 14:20 provides, in pertinent part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; ...
LSA-R.S. 14:22 provides:
It is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person.
At the trial, the defendant did not testify. However, his taped statement was played to the jury. In this statement, the defendant admitted that he approached the victim's truck and argued and fought with the victim. He stated that he reached inside the truck and struck the victim two or three times with his hand, but he denied stabbing the victim. The defendant also admitted that he possessed the knife before and after the fight, until he returned it to Key shortly before the police arrived at the motel. Yet, he could not explain to the officers how blood got on the knife.
In brief, the defendant suggests that he stabbed the victim in self-defense and/or in defense of his friend Key because the victim and Ratley had a gun in the truck when they arrived at the motel in search of a fight or confrontation with the defendant. Although the victim and Ratley went to the motel searching for the defendant, they never got out of the truck. Instead, the defendant and Key approached the truck. Furthermore, although Ratley was armed with his .38 pistol, he specifically testified at the trial that he believed the gun was empty. He also testified that he pulled the gun only after the fight began and he heard the defendant threaten to "cut" the victim. Ratley, who had been preoccupied in his argument or fight with Key on the passenger side of the truck, looked over to the driver's side and observed the defendant holding what he (Ratley) believed to be a knife. At this point, Ratley reached to the floorboard and grabbed his .38 pistol. After a brief struggle over the gun between Ratley and Key, the victim put the truck in reverse, backed out into the street, and drove away. Ratley did not realize that the victim had been stabbed until he slumped over the steering wheel.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. The unanimous guilty verdict returned in this case indicates that the jury rejected the defense theory of justifiable homicide and/or defense of others. During the fight, the defendant was standing outside the driver's side of the truck and Key was standing outside the passenger side. The defendant is the only person who could have stabbed the victim. Because the defendant lied to the police about stabbing the victim during his taped statement, the jury might well have concluded that he did not act in self-defense or in defense of Key and that Ratley reached for his .38 pistol only after the defendant first produced a knife and threatened to "cut" the victim.
Finally, the defendant contends that, at most, the evidence supported only a conviction of the responsive offense of manslaughter.
LSA-R.S. 14:31(1) provides:
*1359 Manslaughter is:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; ...
The existence of "sudden passion" and "heat of blood" are not elements of the offense but, rather, are factors in the nature of mitigating circumstances which may reduce the grade of homicide. Provocation is a question of fact to be determined by the jury. Thus, the issue remaining is whether or not a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106, 110-111 (La.1986); State v. Smith, 490 So.2d 365, 370 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986).
Having found the elements of second degree murder, the jury then had to determine whether or not the circumstances indicated that the crime was actually manslaughter. The unanimous guilty verdict in this case indicates that the jury concluded this was a case of second degree murder and rejected the possibility of a manslaughter verdict. There is no doubt that the defendant and the victim engaged in an initial confrontation at the K & S Convenience Store and, approximately forty-five minutes later, a second confrontation at the LaFloridan Motel. Although the victim and Ratley entered the motel's parking lot searching for the defendant and were armed with a .38 pistol, as noted above, they never got out of the truck. Key initially approached the truck on the passenger side and began arguing with Ratley. The defendant then approached the driver's side of the truck and began arguing with the victim. When the fight began, the defendant reached inside the truck and stabbed the victim at least two times. Considering all of the above, a rational trier of fact might well have concluded that the defendant acted with deliberation and reflection and not in the heat of passion. See State v. Ducksworth, 496 So.2d 624, 630-631 (La. App. 1st Cir.1986). The instant guilty verdict indicates that the jury concluded either: (1) that the initial confrontation at the K & S Store and the subsequent confrontation at the LaFloridan Motel were not sufficient provocation to deprive an average person of his self-control and cool reflection; or (2) that an average person's blood would have cooled before the defendant stabbed the victim. See State v. Maddox, 522 So.2d 579, 582 (La.App. 1st Cir. 1988).
We have carefully reviewed the record and find that the evidence supports the jury's determination. We are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of second degree murder, that he did not kill the victim in self-defense or defense of others, and that the mitigatory factors were not established by a preponderance of the evidence.
These assignments of error are meritless.

CONCLUSION
Based on the foregoing, the conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Although the trial transcript indicates that the defendant entered a plea of not guilty, the court minutes do not contain the defendant's arraignment. Nevertheless, the defendant does not allege, nor do we find, any prejudice. In any event, even if the defendant was never arraigned, such failure to arraign the defendant was waived, since the defendant did not object before trial. La.C.Cr.P. art. 555.
[2] In determining whether or not a ruling on a motion to suppress was correct, this Court is not limited to the evidence adduced at the hearing on that motion. Instead, we may consider all pertinent evidence given at the trial of the case. State v. Fleming, 457 So.2d 1232, 1235 n. 3 (La.App. 1st Cir.), writ denied, 462 So.2d 191 (La.1984).
[3] In these assignments of error, the defendant raised two additional arguments. First, he contends that the instant conviction must be reversed because the trial court erred in failing to give a complete jury instruction on manslaughter. Specifically, he argues that the jury was only informed of "heat of passion" manslaughter (LSA-R.S. 14:31 A(1)) but the trial court did not instruct the jury on that form of manslaughter which occurs when the offender commits a homicide, without any intent to cause death or great bodily harm, while engaged in the perpetration or attempted perpetration of a non-enumerated felony or an intentional misdemeanor directly affecting the person. See LSA-R.S. 14:31 A(2)(a). Second, the defendant contends that the trial court erred in allowing the admission into evidence of testimony about the earlier incident between the defendant and the victim which occurred at the K & S Convenience Store. Specifically, he contends that this earlier incident was irrelevant to the instant offense and prejudicial to his defense.

Neither argument was accompanied by a contemporaneous objection at the trial. Accordingly, these two arguments represent new grounds for objection which may not be raised for the first time on appeal. La.C.Cr.P. art. 841; L.C.E. art. 103 A(1); State v. Hawkins, 496 So.2d 643, 647 (La.App. 1st Cir.1986), writ denied, 500 So.2d 420 (La.1987). Furthermore, these arguments were not assigned as error and, therefore, will not be considered. Moreover, the record indicates that defense counsel specifically informed the trial court that he had no objection to the proposed jury charge. Additionally, our review of the record indicates that a manslaughter charge under LSA-R.S. 14:31 A(2)(a) was unnecessary because the defendant actually possessed the specific intent to kill or inflict great bodily harm, as will be noted in the discussion of these assignments of error. As for the argument that the incident at the K & S Convenience Store was irrelevant, we completely reject such a suggestion. In fact, as previously noted in our treatment of assignments of error numbers five and seven, the confrontation between the defendant and the victim which occurred at the K & S Convenience Store was extremely relevant to the instant offense because, had the earlier confrontation not taken place, the victim and Ratley would not have driven to the LaFloridan Motel in search of the defendant.