STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 0785

STATE OF LOUISIANA

VERSUS

MORRIS JOSEPH HOLLINS

Judgment Rendered: __MAR 1 3 2024__

* * * * *

On Appeal from the
18th Judicial District Court
In and for the Parish of Pointe Coupee
State of Louisiana
Trial Court No. 84723

Honorable J. Kevin Kimball, Judge Presiding

* * * * *

Antonio M. "Tony" Clayton
District Attorney
Terri Russo Lacy
Assistant District Attorney
Port Allen, LA

Attorneys for Appellee,
State of Louisiana


Lieu T. Vo Clark
Mandeville, LA

Attorney for Defendant-Appellant,
Morris Joseph Hollins

* * * * *

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

Miller, J concurs.

**HESTER, J.**

The defendant, Morris Joseph Hollins, was charged by amended grand jury indictment with two counts of second degree murder (counts one and two), violations of La. R.S. 14:30.1(A)(1); one count of attempted second degree murder (count three), a violation of La. R.S. 14:27 and 14:30.1(A)(1); one count of aggravated criminal damage to property (count four), a violation of La. R.S. 14:55; and one count of being a convicted felon in possession of a firearm (count five), a violation of La. R.S. 14:95.1.[1] He pled not guilty and, after a jury trial, was found guilty as charged on all five counts. The trial court sentenced the defendant as follows: on counts one and two, to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence; on count three, to fifty years imprisonment at hard labor; on count four, to fifteen years imprisonment at hard labor; and on count five, to twenty years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The trial court ordered that the sentences run concurrently.

The defendant now appeals, filing both a counseled and a pro se brief. In his counseled brief, the defendant challenges the sufficiency of the evidence on counts one through three. In his pro se brief, the defendant challenges the trial court's jury instructions. For the following reasons, we affirm the convictions and sentences.

## STATEMENT OF FACTS

On the evening of September 17, 2021, several members of the Hollins family, including the defendant, gathered at Jeffrey Hollins's residence on Delta Place Road in New Roads, Louisiana. After a verbal argument between the defendant's cousin, Gerell Hollins, and several relatives, the defendant shot Gerell nine times. Gerell's father, Gregory Hollins, and another cousin, Howard Hollins, were also struck by

---

[1] As to count five, the predicate conviction is based on the defendant's conviction for illegal use of weapons, a violation of La. R.S. 14:94, trial court no. 83,479-F, 18th Judicial District Court, Parish of Pointe Coupee, State of Louisiana.

2

the gunfire. Gerell and Howard both died from their injuries, but Gregory survived. Thereafter, the defendant was arrested for the murders of Howard and Gerell and the attempted murder of Gregory. After his arrest, the defendant gave a statement denying any involvement in the shooting.[2]

## SUFFICIENCY OF THE EVIDENCE

In his counseled assignment of error, the defendant argues the evidence presented at trial was insufficient to support his convictions for two counts of second degree murder and one count of attempted second degree murder. The defendant argues that the shootings were committed in the heat of passion and the evidence presented at trial only supported convictions for manslaughter and attempted manslaughter.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV, La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, an appellate court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt based on the entirety of the evidence, viewed in the light most favorable to the prosecution. See **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); **State v. Mellion**, 2021-1116 (La. App. 1st Cir. 4/8/22), 342 So.3d 41, 45, writ denied, 2022-00732 (La. 6/22/22), 339 So.3d 1186, cert. denied, ___ U.S. ___, 143 S.Ct. 319, 214 L.Ed.2d 141 (2022); see also La. Code Crim. P. art. 821(B). When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. **Mellion**, 342 So.3d at 45.

The due process standard does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt

---

[2] The defendant was advised of his rights pursuant to **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to giving a statement.

beyond a reasonable doubt. **State v. Mire**, 2014-2295 (La. 1/27/16), 269 So.3d 698, 703 (per curiam). Rather, appellate review is limited to determining whether the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for any rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. The weight given evidence is not subject to appellate review; therefore, an appellate court will not reweigh evidence to overturn a factfinder's determination of guilt. **State v. Germany**, 2021-1614 (La. App. 1st Cir. 9/26/22), 353 So.3d 804, 810, writ denied, 2022-01568 (La. 1/11/23), 352 So.3d 983.

Second degree murder is defined, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). To sustain a conviction for attempted second degree murder, the State must prove that the defendant intended to kill the victim and committed an overt act tending toward the accomplishment of the victim's death. La. R.S. 14:27 & 14:30.1. Although the statute for the completed crime of second degree murder allows for a conviction based on "specific intent to kill or to inflict great bodily harm," La. R.S. 14:30.1, attempted second degree murder requires specific intent to kill. **Mellion**, 342 So.3d at 49.

Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. **State v. Meek**, 2023-0362 (La. App. 1 Cir. 11/9/23), ___ So.3d ___, ___, 2023 WL 7403585, *3. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. **State v. Woods**, 2022-0520 (La. App. 1st Cir. 12/22/22), 2022 WL 17845490, *3 (unpublished), writ denied,

4

2023-00083 (La. 10/3/23), 370 So.3d 1077. Specific intent is an ultimate legal conclusion to be resolved by the factfinder. See **Mellion**, 342 So.3d at 45. Moreover, under the doctrine of transferred intent, when a person shoots at an intended victim with the specific intent to kill or inflict great bodily harm and accidentally kills or inflicts great bodily harm upon another person, if the killing or inflicting of great bodily harm would have been unlawful against the intended victim, then it would be unlawful against the person actually shot, even though that person was not the intended victim. **Woods**, 2022 WL 17845490, *3.

Manslaughter is a homicide which would be either first degree murder or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31(A)(1). Manslaughter, in pertinent part, requires the presence of specific intent to kill or inflict great bodily harm. See **Mellion**, 342 So.3d at 45.

Provocation testimony is an issue of credibility. **Mellion**, 342 So.3d at 47. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed. **Mellion**, 342 So.3d at 45. The existence of "sudden passion" and "heat of blood" are not elements of the offense but, rather, are mitigating factors which the defendant must establish by a preponderance of the evidence. See **State v. Dearmas**, 2022-0494 (La. App. 1st Cir. 11/4/22), 356 So.3d 9, 14, writ denied, 2022-01839 (La. 5/23/23), 360 So.3d 1254; **Mellion**, 342 So.3d at 45. Further, mere words or gestures alone will not be a sufficient provocation to reduce a homicide from murder to manslaughter. See **State v. Overton**, 596 So.2d 1344, 1359 (La. App. 1st Cir.), writ denied, 599 So.2d 315 (La. 1992).

5

Jeffrey Hollins, the defendant's uncle, testified that his nephew, Gerell Hollins, arrived at Jeffrey's home at approximately 5:00 p.m. on September 17, 2021. After Gerell, who had been drinking, exchanged words with Jeffrey, Jeffrey called the police at approximately 8:00 p.m. However, he declined to press charges and instead called his brother, Gregory Hollins (Gerell's father), to assist in taking Gerell home. Jeffrey then went inside the residence, and Gerell left with his cousin, Howard Hollins, but shortly returned. At approximately 9:00 p.m., Jeffrey heard eight or nine gunshots and ran outside, where he observed Gregory, Howard, and Gerell lying on the ground, suffering from gunshot wounds. Jeffrey testified that Gerell was unarmed, and he never felt that he was in imminent danger of receiving great bodily harm or losing his life.

Latisha Hollins, the defendant's mother, testified that on the night of September 17, 2021, Gerell was arguing and threatening to fight with several family members, including Jeffrey. Latisha stated that she was outside with Gerell, Howard, Gregory, and the defendant when the shots were fired. Latisha testified that Gerell did not physically fight, point a gun, or pull a knife on anyone. She further testified that she did not feel as though she or anyone else was in imminent danger of losing their life.

In her interviews with detectives, which were presented to the jury at trial, Latisha explained that sometime in the evening, Jeffrey called her and asked her to come to the house because Gerell was arguing with him, throwing things, and kicking the door in. By the time she arrived, the police and Howard were there. Howard and Gerell then drove off, the police left, and she and Jeffrey went inside the house. When she later went back outside, Gerell was again in the street, arguing, throwing stuff, and threatening to fight her and Howard. Latisha stated that she and Howard laughed at Gerell and told him Gregory was coming to take him home. Latisha said that around that time, the defendant and Gregory arrived separately.

6

Gregory attempted to get Gerell to go home with him, but he refused. Gerell then walked over to Latisha, Howard, and the defendant, and told everyone "f*** y'all" and tried to fight Howard. They again laughed at Gerell and told him that they loved him. Gerell told the defendant, "I've been wanting to f**king kill you," and the defendant laughed. Latisha stated that Gregory and Gerell then walked away, after which she heard gunshots and saw Howard run past her into the street.

Gregory Hollins, the defendant's uncle and the sole surviving victim, testified that he received a phone call from Jeffrey asking him to pick Gerell up. When Gregory arrived at Jeffrey's home, Gerell was in the street, jumping and yelling at Howard and Jacob Hollins, the defendant's brother. Gregory testified that Latisha told Gerell to go home, to which Gerell replied that he was going "no . . . f***ing where." The defendant then said to Latisha, "Don't worry about him, I got something for him." Gregory told the defendant not to worry and that he would take Gerell home soon. Gregory testified that as he and Gerell approached Gregory's vehicle, the defendant began shooting at them. After Gregory was shot, he dropped to the ground, and Gerell fell backwards onto him. According to Gregory, Gerell was unarmed, no one got into a physical fight, and no one was in imminent danger of losing their life.

After eyewitnesses identified the defendant as the gunman, the defendant was brought in for questioning, where he gave a statement denying any involvement in the shooting. In his interview, the defendant stated he was at Jeffrey's residence on the morning of the shooting but denied being there in the evening when the victims were shot.

Dr. Yen Van Vo, a forensic pathologist and an expert in forensic pathology, performed the autopsies on Gerell and Howard. Dr. Van Vo testified that Howard died due to a single gunshot wound to his back, which caused extensive internal bleeding. She further testified that Gerell sustained nine gunshot wounds total: two

7

in his chest, five in his back, one in his left hand, and one in his right hand. Dr. Van Vo noted the gunshot wounds to Gerell's back were consistent with him facing away from the shooter. She further testified the gunshot wounds to his hands were consistent with him facing the shooter and holding his hands up to block the gunshots. Finally, Dr. Van Vo noted that at the time of Gerell's death, his blood alcohol concentration level was 0.169.

Michelle Smith, an expert in crime scene investigation, collected and examined the evidence recovered from the crime scene. Smith testified that she collected eight S&B 10mm auto cartridge cases near the driveway of Jeffrey's residence and one bullet from a vehicle in the driveway. Smith stated the trajectory of the bullet that hit the vehicle is consistent with the shooter positioned in front of the passenger side of the vehicle and shooting at a downward angle. She also explained the downward angle of the shots is consistent with the victim already on the ground.

On appeal, the defendant does not deny that he shot the victims. Rather, he asserts the evidence presented at trial only supported convictions for manslaughter and attempted manslaughter, as he was provoked by Gerell's drunken and aggressive behavior, and he shot the victims in the heat of passion.

After a thorough review of the record, we find that a rational trier of fact, viewing the evidence presented at trial in the light most favorable to the State, could find the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the second degree murder of Howard Hollins and Gerell Hollins, and the attempted second degree murder of Gregory Hollins.

The State presented testimony from the sole surviving victim, Gregory, that the defendant was the person who shot him, Howard, and Gerell. The defendant's specific intent to kill was demonstrated through his act of pointing a gun and firing

8

at Gerell, an unarmed man. See **Woods**, 2022 WL 17845490 at *3. The defendant fired at least fifteen shots, striking Gerell nine times. The five wounds to Gerell's back indicate the defendant, who was positioned behind Gerell, shot Gerell as he was walking away. Further, the two wounds to Gerell's chest were shot at a downward angle, and the two shots to Gerell's palms were entrance wounds. According to Smith and Dr. Van Vo, these shots suggest that after Gerell was shot in the back, he fell to the ground, and the defendant continued to shoot him, despite Gerell raising his hands up as if to surrender or to block the shots. Thus, it was reasonable for the jury to find that the defendant had the specific intent to kill or to inflict great bodily harm on Gerell. Furthermore, it was reasonable for the jury to find the specific intent to kill or to inflict great bodily harm on Howard, as well as the specific intent to kill Gregory, could be transferred from Gerell and inferred from the defendant's actions of shooting at three unarmed individuals. See **Woods**, 2022 WL 17845490 at *6.

The verdict returned in this matter further reflects the jury rejected the defendant's defense of provocation. A reduction of second degree murder to manslaughter requires that the killing be committed in sudden passion or heat of blood *immediately* caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31(A)(1) (emphasis added). The defendant must establish the mitigating factors of sudden passion or heat of blood by a preponderance of the evidence. See **Mellion**, 342 So.3d at 45. Herein, the only evidence of any alleged immediate provocation was the verbal confrontation with Gerell, who made threats and used profanity towards Howard, Latisha, and the defendant. However, nothing in the moments leading up to the shooting established that the defendant had been provoked by Gerell to the extent that an *average person* in the defendant's position would have lost his self-control. Notably, all of the family members present outside when the shooting occurred, including the

9

defendant, laughed when Gerell threatened them, as they did not take his comments seriously. Those family members also testified that they did not feel as though they were in imminent danger of losing their life or receiving great bodily harm due to Gerell's behavior. Indeed, Gerell was unarmed, posed no threat, and did not physically harm anyone, including the defendant.

Furthermore, by the time the defendant began shooting, Gerell was no longer threatening to fight his family and was attempting to leave with Gregory. Although Gerell used profanity towards the defendant and said he wanted to kill him prior to the shooting, the defendant failed to meet his burden of proving the mitigating factors of sudden passion or heat of blood. Accordingly, we find that the jury could have rationally concluded the verbal confrontation between Gerell and the defendant did not equate to provocation sufficient to deprive an average person of their self-control and cool reflection. See **State v. Williams**, 2008-1292 (La. App. 1st Cir. 2/13/09), 2009 WL 385780, *5 (unpublished), writ denied, 2009-1862 (La. 6/25/10), 38 So.3d 350 (after verbal confrontation and physical fight ended and victims attempted to drive away, defendant had time for self-reflection and acted with deliberation when he fired shots at victims); see also **State v. Tran**, 98-2812 (La. App. 1st Cir. 11/5/99), 743 So.2d 1275, 1286, 1292, writ denied, 99-3380 (La. 5/26/00), 762 So.2d 1101.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of a hypothesis presented to, and rationally rejected by, the jury. See **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that the State proved beyond a reasonable doubt all of the elements of second degree murder and attempted second degree murder. This assignment of error is without merit.

10

## JURY INSTRUCTIONS

In his first and second pro se assignments of error, the defendant argues that the trial court erred in several of its instructions to the jury violating his constitutional rights to a fair trial, due process, and equal protection.

The trial court must instruct the jury on the law applicable to the case. La. Code Crim. P. art. 802(1). In analyzing jury instructions, the cases caution against taking certain phrases out of context of the charge as a whole. The test articulated is whether, taking the instruction as a whole, reasonable persons of ordinary intelligence would understand the charge. **State v. West**, 568 So.2d 1019, 1023 (La. 1990); **State v. Leger**, 2017-0461 (La. App. 1st Cir. 5/11/20), 303 So.3d 337, 346.

As an initial matter, we note the defendant failed to make a contemporaneous objection to the allegedly erroneous jury instructions. The failure to make a contemporaneous objection to jury instructions waives review of those jury instructions on appeal. See La. Code Crim. P. arts. 801(C) and 841; **State v. Williams**, 2017-0585 (La. App. 1st Cir. 11/16/17), 236 So.3d 604, 607. However, jury instructions may be reviewed despite the lack of a contemporaneous objection when the alleged error violates a fundamental due process right. **Williams**, 236 So.3d at 607. Therefore, despite the lack of contemporaneous objection, we will consider the defendant's arguments, as he contends his due process rights were violated.

### Instructions on Attorneys' Statements

In the instant case, during jury instructions, the trial court provided the following instruction on statements by attorneys:

> Statements and arguments made by the attorneys are not evidence. In opening statements, the attorneys familiarized you with the facts they expect to prove. In closing arguments, the attorneys represent their analyses of what the evidence has shown and what conclusions they think may be drawn from the evidence.
>
> Therefore, the comments, objections, the opening, the closing arguments of the lawyers for either side do not constitute evidence. Those are merely the lawyers' analyses, interpretation, conclusion, and theory of the

11

case. You may accept or reject those statements if you find them to be reasonable, logical, coinciding with whatever facts you find to have been proven or not proven.

Upon review, we find no error in the challenged instruction. The trial court clearly instructed the jury that the statements and arguments made by attorneys are not evidence and, further, that they may accept *or reject* those statements, depending on whether or not they find the State proved the elements of the offenses. While the defendant contends the jury was incapable of making its own fact determinations and simply accepted the attorneys' statements as conclusive evidence, the instruction merely states that if the jury agrees with the attorneys' conclusions, theories, or analyses, then it may accept those statements. As stated by the Louisiana Supreme Court, "a great deal of credit should be accorded to the good sense and fairmindedness of jurors who have heard the evidence and who know what was and was not proven." **State v. Dupre**, 408 So.2d 1229, 1234 (La. 1982); **State v. Brown**, 2020-0150 (La. App. 1st Cir. 2/19/21), 2021 WL 650816, *14 (unpublished), writ denied, 2021-00458 (La. 6/1/21), 316 So.3d 835. Accordingly, we find no error in the trial court's instruction that the jury may accept or reject statements made by attorneys.

**Instructions on Flight**

The trial court provided the following instruction on flight:

> If you find that the defendant fled immediately after a crime was committed or after he was accused of a crime, the flight alone is not sufficient to prove the defendant is guilty. However, flight may be considered along with all of the evidence. You must decide whether such flight was due to a consciousness of guilt or to other reasons unrelated to guilt.

An instruction on flight is permitted in criminal cases where it is supported by the evidence. See e.g., **State v. Wells**, 2011-0744 (La. App. 4th Cir. 4/13/16), 191 So.3d 1127, 1140, writ denied, 2016-0918 (La. 4/24/17), 219 So.3d 1097; **State v. Alexander**, 2012-194 (La. App. 5th Cir. 5/16/13), 119 So.3d 120, 130, writ denied, 2013-1337 (La. 12/6/13), 129 So.3d 529; **State v. Adams**, 30,815 (La. App. 2d Cir.

6/24/98), 715 So.2d 118, 124, n. 4 writ denied, 98-2031 (La. 3/19/99), 739 So.2d 774. Here, there was sufficient evidence of defendant's flight after the crime was committed to warrant a flight instruction. Therefore, we find no error in the trial court's inclusion of an instruction on flight.

**Instructions on Manslaughter**

During jury instructions, the trial court read the definitions of specific and general criminal intent, second degree murder, manslaughter, and attempt before restating the elements of attempted second degree murder based on those definitions. With respect to its manslaughter definition, the trial court stated the following:

> Manslaughter is the killing of a human being when it is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Mere words or gestures as evidence of provocation will not reduce a murder to manslaughter.

The defendant asserts that this manslaughter instruction was incomplete, as it did not track the language of La. R.S. 14:31(A)(1), which defines manslaughter as "[a] homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." Thus, he contends the instruction did not contain all the elements of manslaughter, which made it impossible for the jury to convict him of manslaughter if the State proved specific intent. Furthermore, he complains that the trial court erroneously included the instruction: "Mere words or gestures as evidence of provocation will not reduce a murder to manslaughter." The defendant argues that it was the State's burden to prove that words or gestures were insufficient provocation, and the determination of whether words or gestures constitute evidence of provocation belonged to the jury, not the judge.

We find no error in the trial court's manslaughter instructions. In an effort to avoid confusing the jury, the trial court removed the references to specific statutes and

13

utilized the definition of the only type of second degree murder applicable to the present case, La. R.S. 14:30.1. The contested definition of manslaughter that was given was followed with the qualification as to "sudden passion or heat of blood." However, the definition of second degree murder included the language "with specific intent to kill or to inflict great bodily harm" without any qualifying terminology as to "sudden passion or heat of blood." See **State v. Harvey**, 26,613 (La. App. 2d Cir. 1/25/95), 649 So.2d 783, 790-91, writs denied, 95-0430, 95-0625 (La. 6/30/95), 657 So.2d 1026, 1028. We find that the removal of a homicide which would be murder in the first or second degree had little to no effect on the definition of manslaughter. Furthermore, in closing arguments, defense counsel clearly distinguished between the two offenses while arguing that the present offense was committed in the "heat of passion." See **Harvey**, 649 So.2d at 791. Accordingly, we find no error in the trial court's definition of manslaughter.

Likewise, we find no error in the trial court's failure to instruct the jury that the State bore the burden of proving provocation, nor its inclusion of the instruction on "mere words or gestures." A defendant who claims provocation as a means of reducing murder to manslaughter has the burden of establishing the mitigating factors of sudden passion or heat of blood by a preponderance of the evidence. **State v. Anthony**, 2023-0117 (La. App. 1st Cir. 11/3/23), ___ So.3d ___, 2023 WL 7270882, *5. Thus, the defendant, not the State, was required to prove that the homicide was committed in sudden passion or heat of blood. Therefore, the issue of provocation was properly submitted to and determined by the jury, not the trial court.

These assignments of error are without merit.

## PATENT ERROR

Pursuant to La. Code Crim. P. art. 920(2), this court routinely reviews appellate records for patent error. **State v. Sylve**, 2022-1104 (La. App. 1st Cir. 2/24/23), 2023 WL 2198829, *3 (unpublished). A patent error is one that is

14

discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. La. Code Crim. P. art. 920(2). After a careful review of the record, we have found three patent errors.

The record reflects that the trial court failed to restrict benefits on count three, as statutorily mandated. See La. R.S. 14:27(D)(1)(a) and La. R.S. 14:30.1(B). However, the restriction of benefits is statutorily deemed to be part of the defendant's sentence pursuant to the self-activating provisions of La. R.S. 15:301.1. Accordingly, we need not take corrective action. See **State v. Lee**, 2023-0079 (La. App. 1st Cir. 6/2/23), 2023 WL 3861763, *1 n.1 (unpublished).

As to count five, the trial court failed to impose the mandatory fine of not less than one thousand dollars nor more than five thousand dollars. La. R.S. 14:95.1(B). Thus, the defendant's sentence on count five, which did not include the mandatory fine, is illegally lenient. However, since the sentence is not inherently prejudicial to the defendant, and neither the State nor the defendant has raised this sentencing issue on appeal, we decline to correct this error. See **State v. Kimble**, 2023-0176 (La. App. 1st Cir. 9/21/23), ___ So.3d ___, 2023 WL 6158506, *6.

The record further reflects that after the trial court imposed the sentences herein, it advised the defendant that he had "two years to apply for post-conviction relief." A defendant generally has two years "after the judgment of conviction and sentence has become final" to seek post-conviction relief. La. Code Crim. P. art. 930.8(A). Thus, the trial court failed to adequately advise the defendant of the prescriptive period for seeking post-conviction relief. However, the trial court's failure to properly advise the defendant has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. **State v. LeBoeuf**, 2006-0153 (La. App. 1st Cir. 9/15/06), 943 So.2d 1134, 1142-43, writ denied, 2006-2621 (La. 8/15/07), 961 So.2d 1158. Accordingly, this error is not reversible, and we decline to remand for resentencing. Out of an abundance of caution and in the

15

interest of judicial economy, we instead note for the record and advise the defendant that La. Code Crim. P. art. 930.8 generally provides that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. Code Crim. P. arts. 914 or 922. **LeBoeuf**, 943 So.2d at 1143.

For the above reasons, we affirm the defendant's convictions and sentences.

**CONVICTIONS AND SENTENCES AFFIRMED.**